# United States Court of Appeals for the Federal Circuit

2009-1357

DELAWARE VALLEY FLORAL GROUP, INC.
(formerly known as Flower Transfers, Inc. and Delaware Valley Wholesale Florist, Inc.)
and ESPRIT MIAMI, INC.,

Plaintiffs-Appellees,

and

SUPERIOR FLORALS, INC.,

Plaintiff-Appellee,

and

CHOICE FARMS CORP.,

Plaintiff-Appellee,

and

CONTINENTAL FARMS, LLC and CONTINENTAL FLOWERS, INC.,

Plaintiffs-Appellees,

and

OLAMOR FLOWERS, INC.,

Plaintiff,

v.

SHAW ROSE NETS, LLC and KENNETH P. SHAW,

Defendants-Appellants.

Ury Fischer, Lott & Friedland, P.A., of Coral Gables, Florida, argued for all plaintiffs-appellees.  With him on the brief for Continental Farms, LLC, et al., was Geoffrey Lottenberg.

James A. Gale, Feldman Gale, P.A., of Miami, Florida, for plaintiffs-appellees Delaware Valley Floral Group, Inc., et al.  With him on the brief was Richard Guerra.

Ted H. Bartelstone, Ted H. Bartelstone P.A., of Miami, Florida, for plaintiff-appellee Superior Florals, Inc.

Steven R. Reininger, Rasco Klock Reininger Perez Esquenazi Vigil & Nieto, P.L., of Coral Gables, Florida, for plaintiff-appellee Choice Farms Corp.

Rhett Traband, Broad and Cassel, of Miami, Florida, argued for defendants-appellants.

Appealed from:  United States District Court for the Southern District of Florida

Judge Adalberto Jordan

# United States Court of Appeals for the Federal Circuit

2009-1357

DELAWARE VALLEY FLORAL GROUP, INC.
(formerly known as Flower Transfers, Inc. and Delaware Valley Wholesale Florist, Inc.)
and ESPRIT MIAMI, INC.,

Plaintiffs-Appellees,

and

SUPERIOR FLORALS, INC.,

Plaintiff-Appellee,

and

CHOICE FARMS CORP.,

Plaintiff-Appellee,

and

CONTINENTAL FARMS, LLC and CONTINENTAL FLOWERS, INC.,

Plaintiffs-Appellees,

and

OLAMOR FLOWERS, INC.,

Plaintiff,

v.

SHAW ROSE NETS, LLC and KENNETH P. SHAW,

Defendants-Appellants.

Appeal from the United States District Court for the Southern District of Florida in case no. 07-CV-20199, Judge Adalberto Jordan.

_____

DECIDED: March 11, 2010
_____

Before BRYSON, LINN, and PROST, <u>Circuit Judges</u>.

PROST, <u>Circuit Judge</u>.

Appellants Shaw Rose Nets, LLC and Kenneth P. Shaw ("Mr. Shaw") (collectively, "Shaw") appeal a final judgment in a patent infringement case in favor of Plaintiffs-Appellees Delaware Valley Floral Group, Inc. (formerly known as Flower Transfers, Inc. and Delaware Valley Wholesale Florist, Inc.) and Esprit Miami, Inc., and Superior Florals, Inc., and Choice Farms Corp., and Continental Farms, LLC and Continental Flowers, Inc., and Olamor Flowers, Inc. (collectively, "Plaintiffs"). Shaw appeals the district court's grant of summary judgment that U.S. Patent No. 5,765,305 ("'305 patent") is invalid based on the application of the on-sale bar pursuant to 35 U.S.C. § 102(b), and the court's subsequent denial of its motion for reconsideration. We affirm.

BACKGROUND

It is undisputed that Mr. Shaw is the inventor and owner of the '305 patent, applied for on January 16, 1996 and issued on June 16, 1998. The '305 patent describes a process that produces larger rose heads by placing elastic, porous nets over the rose heads during the growing process and removing them before the roses are cut and sold. After Shaw sent Plaintiffs several cease-and-desist letters based upon their purported infringement of the '305 patent, Plaintiffs filed a lawsuit against Shaw seeking declaratory relief. Shaw counterclaimed for infringement.

When Mr. Shaw answered Plaintiffs' interrogatories on December 20, 2007 and February 25, 2008, he averred that he invented the process described and claimed in the '305 patent in August 1995. J.A. 201. He also explained that he first offered to sell a product using this process "in or around August/September 1995" to a flower shop in Chicago, Illinois. J.A. 197-98.

On March 13, 2008, Plaintiffs deposed Mr. Shaw. Mr. Shaw testified eighteen times that he invented the process described and claimed in the '305 patent in 1994. When Plaintiffs' counsel asked Mr. Shaw about the discrepancy between his interrogatories and deposition testimony, he responded "[t]hat [the interrogatory answer] was either a mistype or whatever. However, it was August of '94 and I wasn't sure if it was August or about early '94. I thought we had answered with early 1994 . . . ." J.A. 183. When then shown his interrogatory answer indicating August 1995 in Ecuador as the earliest date and location of the conception, Mr. Shaw explained "[i]t was a typo error and I didn't notice it. I read these documents over, too, and I didn't notice the error." Id. Mr. Shaw testified that he knew he developed the invention on May 11 through 14 of 1994 because he confirmed the timing with (1) David Sperber ("Sperber"), his personal assistant in Ecuador; (2) Govindarajan Muthiah ("Muthiah"), a graduate student at the University of Florida hired by Shaw as an employee; and (3) his passport, which he reviewed the night before the deposition and offered for evidentiary support. J.A. 175, 184, 784.

Mr. Shaw explained that Pedro Salzedo ("Salzedo"), a Shaw employee, figured out how to get the right size and quantity nets from the manufacturer. J.A. 178. Mr. Shaw testified that they "ironed out all the wrinkles" and started commercially exporting

roses grown with the patented process in September 1994 to Royal Floral Distributors, who then sold them to hundreds of customers. J.A. 178-80. While he was not sure of the exact date Muthiah started working for him, Mr. Shaw explained that it was approximately September 1994 and that he hired Muthiah after Shaw began commercial sales. J.A. 182. Mr. Shaw stated that he hired Muthiah "to do all the testing, experimental, whatever was necessary to bring [his] patent to market." J.A. 784. Mr. Shaw also discussed his experimentation with Salzedo, using garbage bags and rubber bands instead of netting, in 1995. J.A. 184-85. At the end of Mr. Shaw's deposition, Plaintiffs' counsel announced: "I'm adjourning. We're not done . . . we will reconvene." J.A. 875. They never did reconvene. Mr. Shaw's deposition transcript was available on March 27, 2008.

On May 6, 2008, Plaintiffs served Shaw with a motion for sanctions under Federal Rule of Civil Procedure ("FRCP") 11. Plaintiffs demanded that Shaw withdraw its allegations of infringement due to patent invalidity based upon the application of the on-sale bar pursuant to 35 U.S.C. § 102(b). Shaw responded with a declaration from Muthiah, stating that Mr. Shaw hired him in August 1995. Muthiah explained that he was responsible for "assisting Mr. Shaw in testing, refining and improving his newly discovered method of growing roses with nets on the rose bud." J.A. 518. Muthiah testified that he went to Ecuador in October and November 1995 to test and refine the process, and he completed the testing and prepared the drawings contained in the application for the patent-in-suit in December 1995. J.A. 518-19. Mr. Shaw also executed an errata sheet, on May 23, 2008, in an effort to alter his deposition testimony

to say that the date of the invention and the commercial sales of the roses grown using the patented process was 1995, rather than 1994.

On June 11, 2008, Plaintiffs moved for summary judgment, arguing that the inventor's testimony about the date of the invention and sales of roses grown with the patented process demonstrates that the on-sale bar in 35 U.S.C. § 102(b) invalidates the patent-in-suit. On September 29, 2008, Mr. Shaw executed a declaration in opposition to Plaintiffs' motion, averring that "[t]he year that I conceived the patented method and began selling and importing roses grown utilizing the patented method was 1995, not 1994 as I stated during my deposition." J.A. 465. Mr. Shaw explained that he had confused 1994 with 1995 based upon a last-minute review of his passport, which included many stamps reflecting trips to Ecuador. J.A. 464.

After oral argument, the district court granted summary judgment, dismissing Shaw's counterclaim and invalidating the '305 patent. The district court explained that the only real dispute concerned the dates of conception and commercial sales. The district court dismissed Mr. Shaw's attempt to correct his allegedly mistaken deposition testimony as untimely under FRCP 30. The district court also excluded Mr. Shaw's errata sheet because (1) Mr. Shaw did not equivocate during his deposition and (2) Mr. Shaw "is a seasoned deponent; he stated in his deposition that he has been deposed 40 to 50 times." Del. Valley Floral Group, Inc. v. Shaw Rose Nets, LLC, No. 07-CV-20199, slip op. at 11-12 (S.D. Fla. Dec. 10, 2008) ("Summary Judgment Op."). Similarly, the court did not permit Mr. Shaw to use his declaration of September 29, 2008 ("2008 declaration") to create a genuine issue of material fact with respect to the dates of conception or commercial sales. The district court also concluded that

Muthiah's statement that the invention was "newly discovered" in 1995 could not be used to create a genuine issue of material fact with regard to the date of conception because Muthiah lacked personal knowledge of events that occurred before he was hired. Further, the court found that the process was "ready for patenting" before the statutory critical date, which Shaw did not dispute.

After the district court granted summary judgment, Shaw filed a motion for reconsideration and presented what it termed "newly discovered evidence of the date of the invention and the dates of experimentation with the process after the statutory critical date." The district court denied this motion, finding that the two declarations were not newly discovered because the testimony was not unavailable prior to the grant of summary judgment.

Shaw timely appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Shaw raises several issues on appeal. First, it challenges the district court's grant of summary judgment, arguing that the district court erred in excluding evidence that demonstrates genuine issues of material fact with respect to (1) the date of invention and commercial sales as well as (2) whether the process was "ready for patenting." Second, Shaw challenges the district court's denial of its motion for reconsideration, urging us to consider the additional declarations it submitted. We address these issues in turn.

### I. Standard of Review

We review a district court's grant of summary judgment de novo. Innogenetics, N.V. v. Abbott Labs., 512 F.3d 1363, 1378 (Fed. Cir. 2008). Summary judgment is only

appropriate when there is "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). All reasonable inferences are drawn in favor of the non-movant, and the evidence is viewed in the light most favorable to the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

We review a district court's decision to exclude evidence and to deny a motion for reconsideration under the law of the pertinent regional circuit. Micro Chem., Inc. v. Lextron, Inc., 317 F.3d 1387, 1390-91 (Fed. Cir. 2003) (exclude evidence); Minton v. Nat'l Ass'n Sec. Dealers, Inc., 336 F.3d 1373, 1378 (Fed. Cir. 2003) (motions for reconsideration). The Eleventh Circuit, the pertinent regional circuit here, reviews a district court's decision to exclude evidence for abuse of discretion. Schafer v. Time, Inc., 142 F.3d 1361, 1370 (11th Cir. 1998). Similarly, the Eleventh Circuit reviews a ruling on a motion for reconsideration under the abuse of discretion standard. See Corwin v. Walt Disney World Co., 475 F.3d 1239. 1254 (11th Cir. 2007).

## II. Summary Judgment

On appeal, the first challenge by appellants is that genuine issues of material fact preclude summary judgment based on the application of the on-sale bar. The Supreme Court has established a two-part test for the on-sale bar set forth in 35 U.S.C. § 102(b). Under this test, an inventor is barred from obtaining a patent where the patent application is filed more than one year after (1) the product was sold or offered for sale and (2) the invention is ready for patenting. Pfaff v. Wells Elecs., Inc., 525 U.S. 55, 67 (1998). A patentee that demonstrates experimental use may overcome the application

of the on-sale bar.  See EZ Dock, Inc. v. Schafer Sys., Inc., 276 F.3d 1347, 1352 (Fed. Cir. 2002).

Whether summary judgment was proper in this case rests principally on whether the district court erred in rejecting certain submissions by Shaw that arguably would have, if considered, presented a dispute over issues of material fact, i.e., whether the date of conception and commercial sales of products using the patented process was in 1994 or 1995.  Faced with a motion for sanctions based on Mr. Shaw's deposition testimony stating that 1994 was the date of conception and commercial sales, Shaw tried to recover in several ways.  First, it submitted an errata sheet.  Second, after Plaintiffs moved for summary judgment, it submitted Mr. Shaw's declaration.  Third, it submitted Muthiah's declaration.  All of these were efforts to create a dispute between its newly minted documents and Mr. Shaw's deposition testimony.  The district court dismissed these efforts after determining that each was inadmissible evidence.

With respect to its exclusion of Mr. Shaw's errata sheet, the district court explained that, indisputably, Mr. Shaw's errata sheet was not submitted until well beyond the thirty days FRCP 30(e) affords to deponents to make changes to deposition testimony.  Further, the court determined that Mr. Shaw was a seasoned deponent, giving forty to fifty depositions, who unequivocally and repeatedly testified that he invented the process and sold roses grown via the patented process in 1994 rather than 1995.  Moreover, the court explained that when Plaintiffs' counsel directly and repeatedly confronted Mr. Shaw regarding the discrepancy between his deposition testimony and his interrogatory answers, Mr. Shaw adamantly maintained that 1994 rather than 1995 was the correct date.  He even "offered his passport for verification

and referred to specific stamps and pages from his passport" to support the 1994 dates. Summary Judgment Op. at 12. In addition, Mr. Shaw did not serve his errata sheet until about two and a half weeks after Plaintiffs served him with their motion for sanctions, notifying him that his testimony was fatal to his claim. Id. Based on this record, the district court found that Mr. Shaw's errata sheet and attempt to substantively alter his deposition testimony was untimely and not admissible.

Similarly, the district court rejected Mr. Shaw's newly executed declaration, which sought to make the same changes as his errata sheet in a different format. Finally, the district court excluded Muthiah's declaration because Muthiah lacked personal knowledge as to the events about which he testified.

On appeal, Shaw makes several arguments in challenging the district court's rejection of all three documents. Specifically, Shaw submits that the district court erred in exclusively relying on Mr. Shaw's mistaken and incomplete deposition testimony without consideration of his subsequent errata sheet or declaration. It further argues that the court erred in failing to consider Muthiah's declaration and other evidence,

namely the declarations of Sperber and Salzedo.[1]  We review a district court's decision to exclude evidence for abuse of discretion.  We do not find such abuse here.

It is undisputed that Mr. Shaw's errata sheet was not executed until May 23, 2008, fifty-seven days after March 27, 2008, the date the deposition transcript was available.  Nonetheless, Shaw argues that the district court erred in failing to consider Mr. Shaw's errata sheet because Rule 30(e) does not prohibit such substantive changes, presumably beyond the thirty days.  The district court did not abuse its discretion in this regard.  The Eleventh Circuit has not determined whether Rule 30(e) ever allows for substantive changes to deposition testimony through an errata sheet.  See Cultivos Yadran S.A. v. Rodriquez, 258 F.R.D. 530, 532 (S.D. Fla. 2009).[2]

---

[1]   It is undisputed that Sperber's and Salzedo's affidavits were not offered into evidence until Shaw submitted its motion for reconsideration.  To the extent that Shaw offers this testimony to bolster its argument that summary judgment was inappropriate, we will not consider it here.  This evidence could not have been considered by the district court at that time.  Similarly, based on the facts and circumstances surrounding this case, it would be improper to consider this evidence when determining whether summary judgment was appropriate.  See Dakota Indus., Inc. v. Dakota Sportswear, Inc., 988 F.2d 61, 63 (8th Cir. 1993) ("Th[e] authority to enlarge a record is rarely exercised and is a narrow exception [when the interests of justice demand it] to the general rule that an appellate court may consider only the record made before the district court." (citations omitted)); Dickerson v. Alabama, 667 F.2d 1364, 1367 (11th Cir. 1982) ("federal appellate courts do not often supplement the record on appeal with evidence not reviewed by the court below, . . . [w]hether an appellate record should be supplemented under the particular circumstances of a case is a matter left to the discretion of the federal courts of appeals"), cert. denied, 459 U.S. 878 (1982).  We will appropriately address this additional evidence when we turn to the motion for reconsideration.  See infra Part III.

[2]   At least one circuit, however, has determined that a party cannot create an issue of fact by amending his deposition under Rule 30(e).  See Hambleton Bros. Lumber Co. v. Balkin Enters., Inc., 397, F.3d 1217, 1225-26 (9th Cir. 2005) ("While the language of FRCP 30(e) permits corrections 'in form or substance,' this permission does not properly include changes offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment.").

However, even if Rule 30(e) does not prohibit such substantive changes, it certainly does not require them, particularly after the thirty-day period has passed. Mr. Shaw did not attempt to submit an errata sheet to make substantive changes to his unequivocal testimony until after the thirty days permitted under Rule 30(e) and after Plaintiffs moved for sanctions due to the application of the on-sale bar. Under the circumstances here, Shaw has failed to demonstrate that the district court abused its discretion by excluding his errata sheet.[3]

Further, beyond the errata sheet, Shaw argues that the district court clearly erred in failing to consider Mr. Shaw's 2008 declaration submitted in opposition to summary judgment. Shaw relies primarily on McCormick v. City of Fort Lauderdale, 333 F.3d 1234 (11th Cir. 2003), to support its assertion. We disagree. As the Eleventh Circuit has explained, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." McCormick, 333 F.3d at 1240 n.7 (quoting Van T. Junkins & Assocs. v. U.S. Indus., 736 F.2d 656, 657 (11th Cir. 1984)) (emphasis in McCormick and alterations added). Rather, that affidavit would be a sham. Id.

---

[3] Shaw also argues that the district court erred in relying on Mr. Shaw's deposition because it was "incomplete." Shaw complains that Plaintiffs adjourned Mr. Shaw's deposition while indicating that they would reconvene. They never did. Shaw does not dispute, however, that it failed to raise this argument before the district court. As a general rule, federal appellate courts will not consider issues that were not clearly raised in the proceedings below. Singleton v. Wulff, 428 U.S. 106, 120 (1976); Boggs v. West, 188 F.3d 1335, 1337-38 (Fed. Cir. 1999). Because Shaw failed to raise this argument below, it has been waived and we need not consider it here.

In McCormick, the plaintiff on summary judgment submitted an affidavit that contradicted some of the material facts of a previous sworn statement. Id. The plaintiff explained that his testimony was contradictory because the initial statement was given shortly after he underwent surgery for a gunshot wound and he was recovering from the effects of anesthesia and other pain medications. Id. The Eleventh Circuit wrote:

> [b]ecause McCormick offers some explanation for why his statements directly contradict one another—an explanation that does not appear to us to be itself a complete sham—we will accept and credit McCormick's affidavit submitted on summary judgment. Although McCormick's explanations may not credibly withstand cross-examination, weighing the contradictory statements along with the explanations for those contradictions are judgments of credibility. Issues of credibility and the weight afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment.

Id.

On appeal, Shaw argues that, under McCormick, the explanation that Mr. Shaw provided ought to be sufficient. The circumstances of McCormick, however, are easily distinguishable from those here. Mr. Shaw does not assert that any medical conditions affected his memory or awareness. Rather, his only explanation for his "mistaken deposition testimony" is that he looked at the wrong passport date stamps. However, the logic, persuasiveness, and viability of Shaw's effort to show his deposition testimony was in error is severely undermined by his purported explanation for his inconsistency. Indeed, the documentation Shaw offers for support that there are genuine issues in dispute is the same he offered for why his deposition was correct and his interrogatory answers were mistaken.

It is well settled that a court may "disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly

contradicted by deposition testimony." Id. During his deposition, Plaintiffs' counsel directly asked Mr. Shaw about the discrepancy between the 1994 dates he was currently asserting and the 1995 dates previously averred. In response, Mr. Shaw unequivocally and repeatedly dismissed his earlier interrogatory answers as a mistake. J.A. 175. Further, Mr. Shaw testified eighteen times that he invented the process described and claimed in the '305 patent in 1994 during the deposition. In this case, we cannot conclude that Shaw does anything more than offer a contradictory declaration to create a genuine issue of material fact. Therefore, this case is clearly distinguishable from the facts in McCormick, where the plaintiff proffered an "explanation that d[id] not appear to [the Eleventh Circuit] to be itself a complete sham." McCormick, 333 F.3d at 1240 n.7.

With regard to the district court's failure to consider Mr. Shaw's 2008 declaration, Shaw also cites to this court's opinion in Gemmy Industries Corp. v. Chrisha Creations Ltd., 452 F.3d 1353 (Fed. Cir. 2006). Like McCormick, the facts and circumstances in this case are distinguishable from Gemmy. In Gemmy, we concluded that the district court erred in not considering the later sworn testimony because there was credible evidence in the form of an opposing party's testimony and contemporaneous photographs supporting the contradiction. 452 F.3d at 1358-59. In that case, it was undisputed that the invention offered for sale did not contain the fan unit that was required by all of the claims. Id. at 1359. Instead, the prototypes were inflated with an external hair dryer, which suggested that it was not ready for patenting. Id. In the instant case, there is no corroborating admissible evidence supplied as there was in

<u>Gemmy</u>. Therefore, Shaw fails to demonstrate that the district court abused its discretion in excluding Mr. Shaw's declaration.

In addition to challenging the district court's refusal to admit Mr. Shaw's errata sheet and 2008 declaration, Shaw argues on appeal that the district court erred in excluding Muthiah's declaration, submitted in opposition to summary judgment. According to Shaw, Muthiah was purportedly hired to assist with refining and testing of the patented process. Shaw asserts that Muthiah's declaration further supports its contention that Mr. Shaw mistakenly testified at his deposition that the dates of the invention of the process and the first commercial sales were in 1994, when both actually occurred in 1995.

The district court found that the critical aspects of Muthiah's testimony, including the dates of the invention and commercial sale, occurred before Muthiah was hired. He therefore lacked personal knowledge of those events. Thus, according to the district court, Muthiah's declaration cannot be used to create a genuine issue of material fact that would preclude summary judgment because it was not based on personal knowledge. Reviewing the district court's decision to exclude this evidence for abuse of discretion, we find none.

FRCP 56(e) and the Eleventh Circuit require that affidavits in support of or in opposition to summary judgment must be made with personal knowledge in order to create a genuine issue of material fact. See <u>Pace v. Capobianco</u>, 283 F.3d 1275, 1278 (11th Cir. 2002). Here, there is no dispute that Muthiah started working after the commercial sales took place—whether those sales occurred in either 1994 or 1995—and therefore lacked personal knowledge as to the timing of these events. Accordingly,

the district court did not err in excluding Muthiah's declaration as it relates to the timing of the invention's conception or commercial sales.

Finally, Shaw asserts on appeal that there is also a genuine issue of material fact that precludes summary judgment with regard to whether the process was ready for patenting at the time of the offer to sell. The district court, however, explained that Mr. Shaw testified he "had ironed out all the wrinkles" and started in commercial exportation of roses grown with the process by September 1994. Summary Judgment Op. at 7. Further, the district court explicitly noted that Shaw did not dispute that the invention was ready for patenting at the time roses using the patented process were offered for sale. Id. Therefore, the court found there was no record evidence raising a genuine issue with respect to this prong.

At oral argument on appeal, when questioned about whether Shaw waived this argument, counsel's response was that the argument was "subtly" raised at oral argument before the district court even though it was not the subject of any heading in its brief, and he did not believe the words "ready for patenting" were used. Oral Argument 6:47-7:24, http://oralarguments.cafc.uscourts.gov/mp3/2009-1357.mp3. We conclude that Shaw failed to contest whether the invention was ready for patenting below and that argument is therefore waived.

In sum, the district court did not abuse its discretion when it failed to consider Mr. Shaw's errata sheet or declaration, relied on Mr. Shaw's deposition testimony, or excluded Muthiah's declaration. Because we affirm the district court's findings, the only admissible record evidence does not raise an issue of fact that precludes summary judgment. Rather, upon review, the undisputed evidence demonstrates that the

process was developed, ironed out, and thus ready for patenting, with commercial sales occurring in 1994. As this was all before the statutory critical date, it meets the two prongs of the on-sale bar and summary judgment was proper.

### III. Motion for Reconsideration

The second principal question on appeal is whether the district court abused its discretion in denying Shaw's motion for reconsideration. According to Shaw, the district court erred in failing to consider its "newly-discovered evidence," namely declarations from Sperber and Salzedo, which allegedly corroborate Mr. Shaw's corrected deposition testimony and creates a genuine issue of material fact with regard to when the patented process was ready for patenting.

The three primary grounds that justify reconsideration are: "(1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." Degirmenci v. Sapphire-Fort Lauderdale, LLLP, 642 F. Supp. 2d 1344, 1353 (S.D. Fla. 2009) (quotation marks and citation omitted). "[W]here a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion." Shuford v. Fid. Nat'l Prop. & Cas. Ins. Co., 508 F.3d 1337, 1345 (11th Cir. 2007) (quotation marks and citation omitted, alteration in original).

In denying Shaw's motion for reconsideration, the district court found that Shaw failed to show that either Salzedo's or Sperber's testimony was unavailable during the pendency of the motion for summary judgment. The court noted that Shaw admittedly attempted to locate Salzedo by contacting Salzedo's brother in Florida after the district

court entered final judgment and thus determined Salzedo's testimony was not unavailable or newly-discovered. Del. Valley Floral Group, Inc. v. Shaw Rose Nets, LLC, No. 07-CV-20199, slip op. at 3 (S.D. Fla. Apr. 28, 2009). We review the district court's denial of reconsideration for abuse of discretion.

On appeal, Shaw concedes that Sperber's testimony was not newly discovered evidence. With respect to Salzedo's testimony, Shaw contends that the district court abused its discretion because the record indicates that Mr. Shaw was unaware of Salzedo's location prior to the grant of summary judgment, and that he was only able to locate Salzedo by happenstance. However, Shaw's evidence does not demonstrate that Salzedo was unavailable; it merely shows that Mr. Shaw made no effort to locate him prior to summary judgment. As Shaw failed to provide evidence to establish that Salzedo's testimony was unavailable prior to summary judgment, the court did not abuse its discretion in denying reconsideration.

With respect to its half-hearted argument that manifest injustice requires reconsideration, Shaw appears to assert that this new evidence creates a genuine issue of material fact that precludes summary judgment. However, "[a] motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made." Z.K. Marine, Inc. v. M/V Archigetis, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992). Rather, it is appropriate where the "Court has patently misunderstood a party, or has made a decision outside of the adversarial issues presented to the Court by the parties, or has made an error not of reasoning, but of apprehension . . . . Such problems rarely arise and the motion to reconsider should be equally rare." Ass'n for Disabled Ams., Inc. v. Amoco Oil Co., 211

F.R.D. 457, 477 (S.D. Fla. 2002) (quoting Z.K. Marine, 808 F. Supp. at 1563).  Shaw fails to show that manifest injustice requires reconsideration or that the district court abused its discretion finding the same.

CONCLUSION

The district court did not abuse its discretion in failing to consider Mr. Shaw's errata sheet or declaration, or Muthiah's declaration.  In light of the admissible evidence, Shaw failed to raise a genuine issue of material fact surrounding the dates of conception or commercial sales.  Shaw further failed to dispute that the invention was "ready for patenting."  Therefore, we affirm the district court's grant of summary judgment pursuant to the on-sale bar under § 102(b).  Finally, because Shaw failed to show that the district court erred in disregarding the evidence presented in its motion for reconsideration, we affirm the district court's ruling on Shaw's motion for reconsideration.

AFFIRMED